IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Jonathan Bates,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security<br>Administration,[1]<br><br>    Defendant. | C/A No.: 1:12-2225-MGL-SVH<br><br><br>REPORT AND RECOMMENDATION |

  This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I. Relevant Background

   A. Procedural History

On April 22, 2008, Plaintiff filed an application for SSI in which he alleged his disability began on September 25, 2007. Tr. at 148. His application was denied initially and upon reconsideration. Tr. at 82, 84. On September 29, 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") William F. Pope. Tr. at 26–58 (Hr'g Tr.). The ALJ issued a partially favorable decision on October 14, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 12–21. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on August 3, 2012. [Entry #1].

   B. Plaintiff's Background and Medical History

      1. Background

Plaintiff was 30 years old at the time of the hearing. Tr. at 29. He completed the tenth grade. Tr. at 29–30. His past relevant work ("PRW") was as a landscaping laborer, construction laborer, and drain layer. Tr. at 49–50. He alleges he has been unable to work since September 25, 2007. Tr. at 148.

      2. Medical History

Plaintiff was involved in a car accident on September 25, 2007, and was taken to the emergency room at the Medical College of Georgia ("MCG") with pain in both legs, an open fracture of the left femur, and a facial laceration. Tr. at 222–23. CT and x-ray

scans showed fractures throughout Plaintiff's left leg, including in his knee, femur, and fibula, as well as a compression fracture in his lumbar spine and a fracture of his jaw. Tr. at 223, 244–62. Doctors performed surgery to repair Plaintiff's jaw and leg fractures. Tr. at 223–24, 233–40. Plaintiff was discharged on October 10, 2007, with instructions not to bear weight on his legs and to wear a back brace whenever standing, sitting up, or out of bed. Tr. at 224.

Plaintiff returned for follow up at MCG through June 10, 2008. On October 25, 2007, Plaintiff had knee pain with limited range of motion to 10 to 20 degrees. Tr. at 311. On November 6, 2007, lumbar x-rays demonstrated status post L2–L3 burst fracture with levoscoliosis. Tr. at 310.

In December 2007, Plaintiff attended physical therapy, with no improvement in the range of motion of his left knee. Tr. at 292. However, he was noted to be doing very well overall. *Id.* X-rays revealed that one of his screws appeared to be in the joint. Tr. at 292–93.

On January 10, 2008, Plaintiff underwent removal of arch bars from his mandibular surgery. Tr. at 282, 285–86. Plaintiff was also seen by Nomran B. Chutkan, M.D., an orthopedist, who noted that Plaintiff's left knee range of motion had improved to five to 60 degrees. Tr. at 289. Plaintiff reported that he had been working on a range of motion aggressively with physical therapy and that his range of motion had improved dramatically over the prior week. *Id.* On February 6, 2008, the physical therapist noted that Plaintiff's range of motion was 70 degrees and had come to a standstill. Tr. at 321. His range of motion was not progressing any further and Plaintiff had more valgus

deformity of his left knee. *Id.* On February 20, 2008, the physical therapist wrote that no progress had been made on increasing flexion of the left knee in one month's time. Tr. at 320.

On February 21, 2008, Plaintiff was seen for a follow-up and Dr. Chutkan noted limited range of motion of 0 to 50 degrees with flexion of the left knee. Tr. at 277. Plaintiff's left leg was approximately 1.5 cm longer than his right. *Id.* He was scheduled for left knee manipulation under anesthesia. *Id.*

On March 17, 2008, Plaintiff underwent a removal of a screw from his medial tibial plate as well as knee manipulation under anesthesia. Tr. at 269, 273. On March 19, 2008, Plaintiff's left knee flexion was 70 degrees. Tr. at 319. He reported left hip and left knee pain. *Id.*

On April 1, 2008, Plaintiff had a range of motion of approximately 10 to 50 degrees in his left knee. Tr. at 268. He was told to continue physical therapy. *Id.* On April 3, 2008 Plaintiff's seated knee flexion was 65 degrees. Tr. at 318. On April 9, 2008, Plaintiff reported that he still had difficulty with sitting at the dinner table or trying to do job-related duties like pushing a lawnmower. Tr. at 317. The therapist noted that Plaintiff had not achieved range of motion goals, but that he had no insurance. *Id.* Plaintiff was discharged until he could receive Medicaid. *Id.* A letter from Plaintiff's physical therapist, Melissa Aitken, indicated that Plaintiff was motivated to improve in order to work again, but he did not have insurance to pay for his treatment. Tr. at 324.

On June 10, 2008, Plaintiff's left knee flexion was 0 to 20 degrees.  Tr. at 326.  Plaintiff was diagnosed with arthrofibrosis of the knee, possibly due to calcification on the medial aspect of the knee.  *Id.*

On July 18, 2008, agency consultant Anthony C. Pitts, M.D., wrote that Plaintiff had undergone manipulation in March 2008 without any increase in range of motion and that his diagnosis was arthrofibrosis.  Tr. at 330.  Dr. Pitts wrote that Plaintiff was due for another operative procedure to allow for greater range of motion of the left knee.  *Id.*

In August 2008, Susan Tankersley, M.D., performed a consultative examination of Plaintiff in connection with his disability application.  Tr. at 331–36.  She noted that he had last been seen by an orthopedic doctor on June 10, 2008, when it was recommended that he follow up with another orthopedic surgeon for arthroscopy manipulation under anaesthetic; however, Plaintiff was unable to afford to do so.  Tr. at 332.  On examination, Plaintiff's gait was antalgic and he used a cane.  Tr. at 333.  He had muscle wasting of his left leg with his left knee essentially ankylosed (stiff) from about 0 to 20 degrees of range of motion.  Tr. at 334.  His lumbar spine had marked paraspinous muscle spasms on the left with reduced forward flexion and an obvious step-off at the L3 level.  Tr. at 335.  Dr. Tankersley noted that, considering the extent of the car accident trauma, Plaintiff "look[ed] remarkably good and obviously ha[d] worked hard at physical therapy" to get to the point he was at in his recovery.  Tr. at 336.  However, she opined that Plaintiff's non-mobile knee, combined with his multiple other lower extremity and lower back orthopedic problems, would preclude employment in all jobs but the

5

sedentary. *Id.* Given his education and work background, she suspected that this would render him unemployable. *Id.*

On September 25, 2008, state-agency consultant Steven Fass, M.D., opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and/or walk for two hours and sit for six hours in an eight-hour workday; never performing repetitive movement with the left knee; perform limited movement in his left hip and left ankle to occasional; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, kneel, crouch or crawl.[2] Tr. at 339–46. Dr. Fass also opined that Plaintiff should avoid concentrated exposure to hazards and machinery. Tr. at 343. Dr. Fass noted that Plaintiff would likely need additional left knee surgery to improve his range of motion, but that treatment notes indicated that Plaintiff was unable to afford it. Tr. at 346.

On April 21, 2009—the last day that the ALJ determined that Plaintiff was disabled under the Act—Blake H. More, M.D., performed an examination of Plaintiff in connection with his disability application. Tr. at 348–51. Plaintiff reported to Dr. More that he could sit and stand for 20 minutes each at a time; walk 100 yards at a time (with the use of a cane); climb a few steps at a time; lift 25 pounds; and perform some limited household chores and shopping, but was unable to drive, sweep, mop, vacuum, or mow the lawn. Tr. at 349. Dr. More examined Plaintiff and found antalgic gait with the use of a cane; full hip range of motion; limited lumbar spine range of motion; full cervical spine

---

[2] Although Dr. Fass referenced Dr. Tankersley's report, he did not explain why he opined that Plaintiff could perform light work when Dr. Tankersley opined that Plaintiff could perform only sedentary work.

6

range of motion; full right knee range of motion, but markedly decreased left knee range of motion; pain on straight leg raise on left side; an inability to squat or walk on heels or toes; an ability to heel-to-toe walk with difficulty due to difficulty flexing left leg; and normal strength. Tr. at 350. Dr. More stated that Plaintiff's use of a cane seems to be justified based on history and examination. *Id.* Dr. More opined that Plaintiff's ongoing left leg limitations severely affected his gait and caused ongoing pain preventing Plaintiff from returning to his past work as a landscaper, but added that Plaintiff was "an ideal candidate for vocational rehab[ilitation] efforts." Tr. at 350–51.

In June 2009, state agency physician Robert Kukla, M.D., reviewed Plaintiff's medical records and agreed with Dr. Fass's earlier opinion regarding Plaintiff's work-related abilities, but opined that Plaintiff was more limited in that he could never kneel, crouch, or crawl. Tr. at 352–59. In addition, Dr. Kukla did not opine that Plaintiff needed to avoid exposure from hazards. Tr. at 356.

    C.    The Administrative Proceedings

        1.    The Administrative Hearing

            a.    Plaintiff's Testimony

At the September 2010 hearing, Plaintiff testified that he was single and lived with his parents and his 12-year-old son. Tr. at 29. He stated that his driver's license had been suspended for failure to pay child support. Tr. at 30–31. He reported that his last job had been as a landscaper in 2007 and that he had previously worked in construction and installing yard drainage systems. Tr. at 33–35.

Plaintiff testified that he was in a car accident in September 2007 when he failed to stop at a stop sign and another truck hit him. Tr. at 35–36. He stated that since then, he had not sought vocational rehabilitation, but did not recall ever being told about it. Tr. at 36–37. He stated that he walked with a cane at all times due to pain and lack of flexibility in his left leg. Tr. at 40. He testified that he could stand for 20 minutes at a time with his cane, walk 20 to 30 yards at a time, sit for two to three hours total during the day, and needed to extend his leg while sitting. Tr. at 41–44. He stated that he had trouble sitting because his foot could not touch the floor, that he could only sit for 30 minutes before changing positions, and that he had to prop his leg up to be slightly bent. Tr. at 43. Plaintiff also testified that he wore a back brace. Tr. at 43–44. He said that in a typical day, he sat around the house watching television, helped his son with his homework, and rode around town with his father once a month to pay bills. Tr. at 45–46. Plaintiff said he would like to return to his landscaping work if he could get his "leg right." Tr. at 48.

b. Vocational Expert Testimony

Vocational Expert ("VE") William Stewart reviewed the record and testified at the hearing. Tr. at 49. The VE categorized Plaintiff's PRW as a landscaping laborer as heavy, unskilled work; as a construction laborer as heavy, unskilled work; and as a drain layer as heavy, unskilled work. Tr. at 49–50. The ALJ described a hypothetical individual of Plaintiff's vocational profile who is limited to simple, routine tasks; no lifting or carrying over 20 pounds frequently and 10 pounds occasionally; occasional stooping and balancing; no crouching, kneeling, crawling, or climbing; no foot pedals or

other controls with the left lower extremity; and avoidance of hazards such as unprotected heights and dangerous machinery. Tr. at 53. In addition, the ALJ provided that the hypothetical individual would require a 30-minute sit/stand option and level surfaces for ambulating. *Id.* The VE testified that the hypothetical individual could not perform Plaintiff's PRW. Tr. at 53–54. The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. Tr. at 54. The VE identified sedentary, unskilled jobs of hand packer, hand sorter, and assembler. Tr. at 54–55. Upon questioning by Plaintiff's counsel, the VE stated that the use of a cane for assistance would be a negative vocational factor and would create problems if the hypothetical individual needed to have one hand occupied with the cane. Tr. at 55. The VE further testified that a requirement that the hypothetical individual have his leg partially bent, but mostly extended, would also "most probably" affect the individual's ability to maintain sedentary work. Tr. at 56.

2. The ALJ's Findings

In his decision of October 14, 2010, the ALJ made the following findings of fact and conclusions of law:

1. From September 25, 2007 through April 21, 2009, the claimant did not engage in substantial gainful activity (20 CFR 416.920(b) and 416.971 *et seq.*).
2. At all times relevant to this decision, the claimant has had the following severe impairments: residuals from a motor vehicle accident with secondary problems to the lumbar spine, left and right lower extremity and left hip (20 CFR 416.920(c)).
3. From September 25, 2007 through April 21, 2009, the period during which the claimant was disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

9

4. After careful consideration of the entire record, I find that, from September 25, 2007 through April 21, 2009, the claimant's impairments precluded the performance of even the minimal requirements of sedentary work on a regular and sustained basis.
5. From September 25, 2007 through April 21, 2009, the claimant was unable to perform any past relevant work (20 CFR 416.965).
6. The claimant was born on January 17, 1980 and was 28 years old, which is defined as a younger individual age 18–44, on the date the application was filed (20 CFR 416.963).
7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
8. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity assessed for the period from September 25, 2007 through April 21, 2009 (20 CFR 416.968).
9. From September 25, 2007 through April 21, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.960(c), and 416.966).
10. The claimant was under a disability, as defined in the Social Security Act, from September 25, 2007 through April 21, 2009 (20 CFR 416.920(g)).
11. Medical improvement occurred as of April 22, 2009, the date the claimant's disability ended (20 CFR 416.994(b)(1)(i)).
12. Beginning on April 22, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i)).
13. After careful consideration of the entire record, I find that, beginning on April 22, 2009, the claimant has had the residual functional capacity to perform simple, routine tasks; no lifting over 20 pounds occasionally, 10 pounds frequently and no carrying over 10 pounds; a 30 minute sit/stand option at the workstation; occasional stooping and balancing; no crouching, kneeling, climbing or crawling; no operation of foot pedals or other controls with the left lower extremity; avoidance of hazards such as unprotected heights and dangerous machinery and the requirement of level surfaces for ambulating.
14. The medical improvement that has occurred is related to the ability to work (20 CFR 416.994(b)(1)(iv)(A)).
15. Since April 22, 2009, the claimant's age category has not changed (20 CFR 416.963).
16. Beginning on April 22, 2009, the claimant has been unable to perform past relevant work (20 CFR 416.965).

17. Beginning on April 22, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
18. Beginning on April 22, 2009, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 416.960(c) and 416.966).
19. The claimant's disability ended on April 22, 2009 (20 CFR 416.994(b)(5)(vii)).

Tr. at 15–20.

II. Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) The ALJ did not properly explain why he found medical improvement as of April 22, 2009;

2) The ALJ erred in his RFC determination;

3) The ALJ did not properly evaluate whether Plaintiff met Listings 1.02 and 1.03; and

4) The ALJ erred in the credibility assessment.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g).

The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B. Analysis

1. Medical Improvement Determination

Plaintiff contends that although the ALJ identified April 22, 2009, as the date of Plaintiff's medical improvement and the date his disability ended, the ALJ failed to

demonstrate medical improvement because he did not document any decrease in the severity of Plaintiff's impairments. [Entry #15 at 14–18]. In response, the Commissioner contends that the ALJ reasonably relied on the opinions of Drs. Tankersley, More, Fass, and Kukla in finding that Plaintiff could return to a range of light work by April 22, 2009. [Entry #16 at 10–12].

Medical improvement is defined as "any decrease in the medical severity of [the] impairment(s) which was present at the time of the most recent favorable medical decision" of disability. 20 C.F.R. § 416.994(b)(1)(i). The determination of "a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the] impairment(s)." *Id.* To determine whether medical improvement has occurred, the severity of the claimant's current medical condition is compared to the severity of the condition "at the time of the most recent favorable medical decision that [claimant was] disabled." *Id.* Additionally, medical improvement is related to the ability to work if the improvement results in an "increase in [the] functional capacity to do basic work activities." 20 C.F.R. § 416.994(b)(1)(iii).

Here, the ALJ found that medical improvement occurred as of April 22, 2009. Tr. at 18. The Commissioner contends that, in support of his medical improvement determination, the ALJ noted Dr. Tankersley's 2008 finding that Plaintiff could perform sedentary work and Dr. More's opinion that Plaintiff was an ideal candidate for vocational rehabilitation. [Entry #16 at 10–11]. The Commissioner also cites the

opinions of Drs. Fass and Kukla that Plaintiff could perform a range of light work as support for the ALJ's decision. *Id.* at 11.

Despite the Commissioner's argument, a plain reading of the ALJ's decision reveals that the ALJ did not provide any explanation to support his determination regarding Plaintiff's medical improvement. *See* Tr. at 18, ¶ 11. The ALJ referenced the opinions of Drs. Tankersley and More only in his summary of the medical records and in his credibility analysis. In addition, the ALJ did not reference the opinions of Dr. Fass and Kukla anywhere in his opinion. Thus, the Commissioner's reliance on those opinions to support the medical improvement determination is an impermissible post hoc rationalization. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

Even assuming the ALJ had referenced the opinions of Drs. Tankerlsey and More in conjunction with his medical improvement determination, the opinions do not provide the support required for such a finding. Dr. Tankersley's opinion that Plaintiff may be able to engage in sedentary work was rendered eight months prior to the purported date of medical improvement and, therefore, cannot form the basis for a finding of medical improvement. Dr. More's opinion was rendered one day prior to the purported date of medical improvement. The Commissioner states that the ALJ "clearly relied" on Dr. More's opinion in finding that Plaintiff was no longer disabled. [Entry #16 at 10]. However, the ALJ failed to identify any symptoms, signs, or laboratory findings from Dr. More demonstrating medical improvement.

For the foregoing reasons, the undersigned recommends this matter be remanded to the ALJ for further consideration of whether medical improvement has occurred. If the ALJ determines that medical improvement has occurred, he should provide an explanation for that determination.

2. RFC Determination

Plaintiff also argues that the ALJ's RFC determination is insufficient because the ALJ failed to make a function-by-function assessment and did not include Plaintiff's need for an assistive device for standing and walking. [Entry #15 at 18–24]. The Commissioner responds that the ALJ's RFC determination was sufficiently detailed and contained the requisite function-by-function assessment. [Entry #16 at 12–14].

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 416.945(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p. The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." *Id.* The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. *Id.*

Plaintiff's allegation of error rests primarily upon the ALJ's failure to address Plaintiff's need for a cane in the RFC determination. The Commissioner argues "[t]o the extent the ALJ did not explicitly provide that Plaintiff needed the ability to use his cane to stand and walk . . ., the ALJ found that Plaintiff's testimony regarding his need to use a

17

cane at all time[s] was not credible and thus reasonably did not incorporate that allegation by Plaintiff into the assessment." [Entry #16 at 13, n. 8].

The Commissioner's argument assumes that the only support for Plaintiff's need for a cane was based upon his own testimony and ignores the medical records of Drs. Tankersley and More on this issue. In August 2008, Dr. Tankersley noted that Plaintiff's gait was antalgic and he used a cane. Tr. at 333. In April 2009, Dr. More likewise found Plaintiff had an antalgic gait with the use of a cane. Tr. at 350. Dr. More opined that Plaintiff's use of a cane seemed to be justified based on history and examination and that Plaintiff's ongoing left leg limitations severely affected his gait. Tr. at 350–51.

Also of significance is the VE's testimony regarding how the use of a cane impacts an individual's ability to work. The VE stated that the use of a cane for assistance would be a negative vocational factor and would create problems if the hypothetical individual needed to have one hand occupied with the cane. Tr. at 55.

Based on the foregoing record evidence, the undersigned concludes that the ALJ erred in omitting any discussion of Plaintiff's need for a cane from the RFC assessment. The undersigned, therefore, recommends remanding this matter to the ALJ and directing the ALJ to address all of Plaintiff's alleged limitations—including Plaintiff's use of a cane and his alleged sitting, walking, and standing restrictions—in the RFC determination.

       3.     Remaining Allegations of Error

Because the undersigned recommends remand based on the ALJ's failure to properly explain his medical improvement and RFC determination, Plaintiff's remaining

allegations of error are not addressed. However, on remand, the undersigned recommends directing the ALJ to consider and address whether Plaintiff meets Listings 1.02 and 1.03. The undersigned further recommends directing the ALJ to complete a more thorough credibility analysis that is in compliance with the applicable regulations and addresses why the ALJ found Plaintiff's complaints credible prior to April 22, 2009, but not thereafter.

III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

October 3, 2013  Shiva V. Hodges
Columbia, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).